Commonwealth v. Arroyo.

COMMONWEALTH vs. DANIEL ARROYO.

No. 06-P-1354.

Suffolk. June 12, 2007. - September 25, 2007.

Present: BERRY, MILLS, & GREEN, JJ.

Further appellate review granted, 450 Mass. 1104 (2007).

*Practice, Criminal,* Probation, Revocation of probation.

This court concluded that even though a Superior Court judge, in revoking the
    criminal defendant's probation and committing him to serve a State prison
    term, erred in considering an alleged criminal offense that occurred after
    the probation term had ended, there was no reason to remand the case,
    where the full context of the judge's findings concerning the probation
    revocation and the imposition of the sentence made clear that the revoca-
    tion and sentencing disposition would have remained unchanged even
    absent the consideration of the offense committed outside the probation
    period. [231-233] MILLS, J., dissenting.

There was no merit to a criminal defendant's argument that the judge's failure
    to issue written findings following the defendant's probation revocation
    hearing deprived him of his due process rights, where the judge articulated
    the reasons for his decision orally. [233-234]

INDICTMENTS found and returned in the Superior Court Depart-
ment on October 20, 1999.

A probation revocation hearing was held before *Jeffrey A.
Locke*, J.

*Donna Jalbert Patalano* for the defendant.

*David R. Bartholomew* (*Helle Sachse*, Assistant District At-
torney, with him) for the Commonwealth.

BERRY, J. The defendant appeals from an order of the Superior
Court revoking his probation and committing him to serve a
three- to five-year State prison term. The defendant argues that
the judge (a) improperly based his decision to revoke probation
on an alleged criminal offense that occurred after the probation-
ary term had expired; (b) failed to provide a written statement
outlining the reasons for revoking probation; and (c) improperly

admitted hearsay statements as excited utterances at the revocation hearing.

*Procedural history.* On December 14, 1999, the defendant pleaded guilty to indictments charging armed carjacking and assault by means of a dangerous weapon. The defendant was sentenced to two years in the house of correction on the carjacking offense and, on the remaining offense, was placed on probation for four years, to commence from and after his incarceration on the carjacking charge. The probationary term was due to expire on April 4, 2005. The defendant signed a probation contract on December 16, 1999, which listed conditions including that he pay a monthly probation supervision fee; report every two weeks to his probation officer; obtain his GED; and obey local, State, and Federal laws.

In October of 2003, while he was still on probation, the defendant was given a "Notice of Surrender and Hearing(s) for Alleged Violation(s) of Probation." Among the violations enumerated were the defendant's failure to (1) report to his probation officer every two weeks; (2) pay the probation supervision fee; and (3) provide verification of a GED. The notice also listed new charges against him in the District Court for burglary, malicious destruction of property, assault and battery, threatening, and receiving stolen property. On February 24, 2004, the defendant was found in violation of the terms and conditions of his probation, and his probation was continued at the request of his probation officer, one William Mitchell, to its original termination date of April 4, 2005, with the same terms and conditions remaining in effect.

In October, 2004, while the defendant was still on probation, he was given a third "Notice of Surrender and Hearing(s) for Alleged Violation(s) of Probation," dated September 30, 2004.[1] The notice alleged an unspecified new offense charged in the District Court[2] and the failures to pay the probation supervision fee and to verify address and income monthly. An amended

---

[1]Apparently, the defendant had been given a second "Notice of Surrender and Hearing(s) for Alleged Violation(s) of Probation" in July, 2004, but that notice was withdrawn on August 6, 2004, at the request of the probation officer.

[2]In its brief, the Commonwealth suggests that the charge was operating a motor vehicle after license suspension. In any event, no evidence as to the

notice was given to the defendant in January, 2005, which listed new offenses that he allegedly committed on December 18, 2004, as set forth in a District Court complaint dated December 30, 2004, charging armed robbery, assault and battery by means of a dangerous weapon, assault and battery by means of a dangerous weapon on a person over the age of sixty-five, malicious destruction of property, and two counts of reckless operation of a motor vehicle.[3] The amended notice also added that the defendant had failed to report to probation as ordered. In June, 2005, the notice was again amended to include a new charge, of assault and battery committed on May 12, 2005, set forth in a District Court complaint dated the next day.

*Revocation hearing.* On July 12, 2005, after several continuances, the probation revocation hearing which is the subject of this appeal was held in the Superior Court to address the violations set forth in the September, 2004, notice, and the amended notices given to the defendant in January, 2005, and June, 2005.

The defendant's probation officer, William Mitchell, testified. Mitchell stated that on March 15, 2005, he sent a letter to the defendant, a copy of which was admitted in evidence. According to Mitchell's testimony, the letter outlined the defendant's failures to meet his payment obligations with respect to his probation supervision fee and to provide verification of his GED. As of March, 2005, the defendant owed $385 in supervision fees and an additional $150 in independent counsel fees. Mitchell testified that after the letter was sent, the defendant missed several reporting appointments.

At the hearing, the defendant's former girlfriend, Chdaydie O'Otero, and another witness, Javier Colon, testified to events that purportedly formed the basis for the December, 2004, complaint.

Officer Goff of the Boston police department testified with respect to the May 12, 2005, offense. On that date, he responded to a radio call to proceed to the defendant's home and found

offense alleged in the September 30 notice was introduced at the revocation hearing, and the judge made no mention of it in his findings.

[3]The notice also reflected two other new offenses, trespassing and operating a motor vehicle after license suspension. On the day of the hearing, these offenses were withdrawn as a basis for the violation.

O'Otero there, crying and upset. She told Goff that the defendant had tried to block her from leaving, pushed her, and choked her. Goff noticed red marks on her neck and a scratch on her wrist. O'Otero testified that she had lied to the police and that the defendant did not assault her.

At the conclusion of the hearing, the Superior Court judge issued his findings and rulings orally from the bench. The judge found that the defendant failed to complete his GED, "to report on a period[ic] basis, as directed by the probation officer," and to pay the $385 supervision fee that had accrued. The judge did not credit the evidence related to the new offenses that allegedly occurred in December, 2004, and he did not consider that evidence in reaching his decision. The judge did, however, credit Goff's testimony regarding the offense committed against O'Otero on May 12, 2005.

In imposing the State prison sentence of a three- to five-year term, the judge placed emphasis on the length of the defendant's history in the criminal justice system. The judge also took account of the fact that this was the defendant's second probation revocation hearing, the defendant having already been found in violation of his probation on a previous occasion. The judge was particularly concerned with the probation officer's evidence that depicted a probationer who had failed to comply "with relatively easy terms of probation." The judge pointed to "[t]he fact that [the defendant] would willfully ignore [his] obligation to report, [his] obligation to pay fees, and that while on probation, [the defendant] would . . . assault another person."

1. *Offense outside the probationary term.* On appeal, the defendant claims that the judge should not have considered the May 12, 2005, offense because it occurred more than a month beyond the original probation period, which expired on April 4, 2005. The defendant did not object at the revocation hearing to consideration of the May 12 offense on this ground, and arguably has waived the point. See *Commonwealth* v. *Morse*, 50 Mass. App. Ct. 582, 589 (2000). Even if the claim has not been waived, the claim is unpersuasive for the reasons that follow.

It is well established that a defendant's probation cannot be revoked for a violation that took place after the expiration of its term. See *Commonwealth* v. *Sawicki*, 369 Mass. 377, 384-385

(1975); *Commonwealth* v. *Aquino*, 445 Mass. 446, 449 (2005). Here, the parties both properly agree that the May 12 offense occurred beyond the term of the defendant's probation, and that the judge should not have considered this offense in revoking the defendant's probation.

Relying on *Commonwealth* v. *Aquino, supra*, the defendant argues that this error requires that we vacate the order revoking probation and imposing the State prison sentence. The *Aquino* case bears points of similarity to this case in that, in both cases, the judge's revocation of probation cited not only a defendant's failures to comply with the conditions of probation, but also cited criminal offenses occurring beyond the probationary period. *Id.* at 447-448. However, there is a central and, we think, controlling distinction between *Aquino* and the case at bar. The *Aquino* judge made clear that she "would not have imposed a State prison sentence if the only infractions had been the so-called 'technical' violations."[4] *Id.* at 448. Given this explicit reservation by the judge in *Aquino*, the Supreme Judicial Court remanded the *Aquino* case because the court could not determine "what action the judge would have taken had she found the defendant in violation of probation based on the ['technical'] violations committed during the original period of probation," that is, had the new postprobation offenses not also been considered. *Id.* at 450-451. It was this uncertainty as to how the judge would have sentenced the defendant that prompted the Supreme Judicial Court to remand the case for clarification.

We do not see in this case the kind of uncertainty of sentencing disposition that marked the *Aquino* probation revocation. In contrast to the *Aquino* judge, in this case the judge made clear that in imposing the State prison sentence, he was giving substantial weight to the defendant's violations of his probation conditions, including, as catalogued by the judge, the defendant's failure to report to the probation department as required, his failure to pay fees, and his failure to obtain a GED. Further, in

---

[4]To describe a violation of a condition of probation as a technicality is a misnomer. Conditions of probation are set by the court — and whether the condition is the payment of fees or the obtaining of a GED, it is an order to be complied with to retain the benefit of probation rather than be incarcerated.

contrast to the *Aquino* judge, who had expressly stated that the "technical" probation condition violations may not have yielded the sentence imposed, the judge here did not deem the violations to be merely technical. Rather, the judge considered the violations to be serious and repeated acts of noncompliance by the defendant notwithstanding "relatively easy terms of probation." Indeed, the judge cited the defendant's repeated violations of the conditions of probation as demonstrating that the defendant was no longer a suitable candidate for probation. See *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976) ("Any conduct by a person on probation which constitutes a violation of any of the conditions of his probation may form the basis for the revocation of that probation"). See also *Commonwealth* v. *Hector H.*, 69 Mass. App. Ct. 43, 48 n.3 (2007).

Furthermore, in his sentencing remarks, the judge cited the defendant's long-standing criminal history and noted that this was the defendant's second probation violation. As the judge stated in imposing the prison sentence, the defendant had "received an enormous break, when [he was] first sentenced in this court . . . [b]ut, things have changed since 1999 to the present, and probation is an opportunity to prove that, in fact, you can be responsible and productive." The judge found that the defendant had "failed in both of those regards." See *Commonwealth* v. *Durling*, 407 Mass. 108, 116 (1990) ("The Commonwealth has an interest in imposing effective punishment on a convicted criminal when rehabilitation is not possible").

In sum, from the full context of the judge's findings concerning the probation revocation, and the imposition of the three- to five-year State prison sentence, we are convinced that in this case, unlike in *Aquino*, even absent the error in consideration of, and reference to, the May 12, 2005, offense, the revocation and sentencing disposition would remain unchanged. Thus, we see no reason for a remand.

2. *Written findings.* The defendant's argument that his due process rights were infringed by the judge's failure to issue written findings is without merit where the judge articulated the reasons for his decision orally from the bench and those reasons

appear in the transcript of the revocation hearing. See *Commonwealth* v. *Morse*, 50 Mass. App. Ct. at 592-593.[5]

*Order revoking probation and
imposing sentence affirmed.*

MILLS, J. (dissenting). I take the view that this case is controlled by *Commonwealth* v. *Aquino*, 445 Mass. 446 (2005), and, accordingly, respectfully dissent. Acts occurring after the expiration of the probationary period are not permissible grounds for probation revocation. See *Commonwealth* v. *Sawicki*, 369 Mass. 377, 384 (1975); *Commonwealth* v. *Aquino*, 445 Mass. at 449. If a reviewing court "cannot determine on the record presented what action the judge would have taken had [he] found the defendant in violation of probation based [only] on the violations committed during the original period of probation," the court must remand. *Commonwealth* v. *Aquino*, 445 Mass. at 450-451.

In this case, the Commonwealth acknowledges that the judge improperly considered the May 12, 2005, offense when he revoked the defendant's probation. Because of this error, the rule articulated in *Aquino* applies. Neither this court nor the Commonwealth can possibly know what the judge would have done had he not considered the May 12 incident.

The Commonwealth fails to provide any support for the proposition that when a judge improperly considers postprobation conduct, a reviewing court should determine what the judge would have done had he not committed that error. In fact, the *Aquino* decision expressly prohibits this inquiry and instead mandates that the reviewing court remand when it is unsure what course of action the judge would have taken had he not committed error. See *ibid.*

The Commonwealth contends, notwithstanding the postprobation conduct, that there is enough support for the revocation

---

[5]Because we conclude that the May 12 incident should not have been considered by the judge, we pretermit any question related to the evidentiary challenges the defendant raises concerning the admission of excited utterance evidence on that charge at the revocation hearing.

of the defendant's probation. Although this may be true because a "violation of any of the conditions of . . . probation may form the basis for the revocation of that probation," *Rubera* v. *Commonwealth*, 371 Mass. 177, 181 (1976), the decision to revoke probation rests with the trial judge, not this court. See G. L. c. 279, § 1A, as appearing in St. 1975, c. 459, § 1 ("When a person convicted before a court is sentenced to fine and imprisonment, the court may direct that . . . he be placed on probation . . ."). See also *Commonwealth* v. *Morse*, 50 Mass. App. Ct. 582, 594 (2000) (holding that a reviewing court examines the record to determine whether there is "sufficient reliable evidence to warrant the findings by the judge that [the probationer] had violated the specified conditions of his probation").

The Commonwealth and the majority suggest that *Aquino* is distinguishable from this case in three ways: (1) that the judge in this case, unlike the judge in *Aquino*, did not state that he would not have imposed a prison sentence if the only infractions had been technical violations; (2) that the violations in this case, unlike the violations in *Aquino*, are not mere technical violations; and (3) that the judge in this case, unlike the judge in *Aquino*, did not rely heavily on the postprobation conduct. I do not find these distinctions persuasive.

1. *The judge did not state that he would not have imposed a prison sentence if the only violations had been "technical" violations.* Although the judge did not indicate what he would have done if the defendant's only violations had been "technical," the absence of such a statement should not be construed against the probationer. If it were, then judges would be free to rely on postprobation conduct with impunity, in violation of the *Sawicki* rule, because whenever a judge improperly considered postprobation conduct, a reviewing court could affirm the revocation of probation by simply pointing to the absence of this statement. See *Commonwealth* v. *Sawicki*, 369 Mass. at 384. Thus, the absence of this statement does not ameliorate the error below or indicate what the judge would have done had he not committed error. The uncertainty of sentencing disposition that marked the *Aquino* probation revocation is concededly not as pronounced here, but in my view the uncertainty is significant.

2. *The defendant's probation violations are merely technical violations.* The Commonwealth argues that the defendant's probation violations, not including the May 12 incident, are more than mere technical violations. To support this contention, the Commonwealth quotes the judge's statement that the defendant failed to comply with the "relatively easy terms of probation." On the basis of this statement, the Commonwealth concludes that the judge believed the defendant's failure to report, pay fees, and obtain a GED, combined with the recommendation by his probation officer, were sufficient for revocation.

One problem with this argument is that we have no idea what the "relatively easy terms of probation" are. The Commonwealth invites us to construe that statement as concluding that the violations, not including the May 12 incident, are more than mere technical violations. However, the "easy terms of probation" may be referring to technical violations or substantive violations — there is no principled reason to choose one interpretation over the other. In addition, the "technical violations" in *Aquino* do not differ significantly from the probation violations in this case: in *Aquino*, 445 Mass. at 447, the probationer failed to perform community service, failed to pay probation supervision fees, and failed to report for an administrative hearing; in this case, the probationer failed to obtain a GED, failed to report regularly,[1] and failed to pay probation supervision fees. It is also conceivable that "easy terms of probation" is a reference to the universal condition of probation of obeying State and Federal laws. If this is the case, then "easy terms of probation" is an inappropriate reference to the May 12 incident.

3. *Extent of the judge's reliance on the defendant's postprobation conduct.* The Commonwealth argues that the judge did not rely heavily on the defendant's postprobation conduct. This statement is simply not true. The parties' briefs document the fact that both the probation officer and the judge relied primarily on the defendant's postprobation conduct in deciding to recommend and order the revocation of probation.[2]

---

[1]The defendant has failed to demonstrate within the record on appeal that the judge's finding in this regard was clearly erroneous.

[2]The judge described the May 12 incident in great detail and evaluated the

In conclusion, this court cannot know what the judge would have done had he not considered the May 12 incident, and thus, a remand is required under *Aquino*.

---

credibility of the witnesses. The judge explicitly found that the defendant committed a new offense in May, 2005, and stated that the fact that the defendant would assault another person while on probation warranted incarceration. The probation officer stated that in making his recommendation, he considered "the violent aspect of [the defendant's] ongoing case in the District Court, which we found him in violation for."