NOTICE: All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports. If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

13-P-1076                                    Appeals Court

COMMONWEALTH  vs.  DONALD GIBSON.

No. 13-P-1076.

Hampden.    February 18, 2015. - August 10, 2015.

Present:  Green, Grainger, & Massing, JJ.

Practice, Criminal, Probation, Revocation of probation, Assistance of counsel. Due Process of Law, Probation revocation, Assistance of counsel. Constitutional Law, Assistance of counsel.

Indictments found and returned in the Superior Court Department on February 22, 2006.

A hearing on an order to show cause why the defendant should not be deemed to have forfeited his right to counsel at a probation revocation proceeding was had before C. Jeffrey Kinder, J., and a proceeding for revocation of probation was heard by Richard J. Carey, J.

Glynis Mac Veety for the defendant.
Bethany C. Lynch, Assistant District Attorney, for the Commonwealth, submitted a brief.

GREEN, J.  After a hearing at which the defendant proceeded without counsel, a judge of the Superior Court found that the defendant had violated conditions of his probation, and entered

an order revoking his probation and imposing a sentence. On appeal, the defendant challenges the judge's ruling before the revocation hearing that he had forfeited his right to counsel.[1] We discern no error in the ruling, and discern no merit in the defendant's other claims of error in the revocation proceeding itself. We accordingly affirm the order of revocation.

Background. On August 8, 2008, the defendant was convicted by a jury on two charges of indecent assault and battery on a child under fourteen. He was sentenced on count one to not less than eight years and not more than ten years in State prison. On count two he was sentenced to probation for fifteen years to run concurrently with the sentence on count one, with the condition, among others, that he have no contact with the victim (the defendant's daughter) or her mother without their express authorization.[2] On September 14, 2011, the probation department filed a notice of surrender alleging that the defendant, while still incarcerated, had sent letters to the victim. Following a hearing on April 16, 2013, at which the defendant proceeded without counsel, a Superior Court judge found the defendant in violation of the conditions of his probation, revoked his

---

[1] The defendant also claims various errors in the revocation hearing itself, as discussed in more detail below.

[2] A panel of this court affirmed the convictions in an unpublished memorandum of decision. See Commonwealth v. Gibson, 78 Mass. App. Ct. 1119 (2011).

probation and sentenced him to not less than seven years and not more than eight years from and after the sentence he was then serving.

The relationship between the defendant and his several court-appointed attorneys was tumultuous throughout the proceedings. Prior to the defendant's conviction, four attorneys were permitted to withdraw from their representation of him for various reasons, including: (1) accusations by the defendant of participation by his first attorney in a conspiracy with the district attorney against the defendant, (2) accusations by the defendant of unethical conduct by his second attorney, (3) threats by the defendant against his third attorney of physical violence and complaint to the Board of Bar Overseers, and (4) disagreements over trial strategy and a breakdown of the professional relationship with his fourth attorney. During the pendency of the probation revocation proceedings, three more attorneys were permitted to withdraw, based on: (1) the defendant's combative attitude, (2) breakdown of the professional relationship, and (3) threats by the defendant to sue his last attorney and report him to the Board of Bar Overseers.[3]

---

[3] The parties did not include within the record appendix copies of the affidavits of counsel submitted with their respective motions to withdraw from representation of the defendant. Following oral argument, we requested from the trial

At the hearing, held on June 28, 2012, at which the last attorney, attorney Dunphy, was appointed to represent the defendant, the judge warned the defendant that he would have to work with his newly-appointed counsel, or else he would have to proceed without counsel.[4]  Despite that warning, the relationship

---

court copies of those motions and supporting affidavits, all of which were before the hearing judge when he ruled on the question of forfeiture.  The trial court thereafter transmitted all of the requested affidavits but one, which it was unable to locate.  The affidavits substantiate the summary descriptions of the breakdown in the relationship between the defendant and each appointed counsel in disturbing detail, including direct and implied threats to kill (or have others kill) one of his appointed counsel, and a consistent pattern of accusing counsel of conspiring to work against the defendant's interest, requests that counsel communicate messages from the defendant to the victim (in violation of the condition of his probation that he have no contact with the victim or her mother), and insisting that counsel pursue unspecified but frivolous or meritless avenues of defense.

[4] The transcript of the hearing reveals the following exchange:

Mr. Dunphy:  "I think I'll be able to take care of Mr. Gibson, Judge."

Judge:  "You know what, Mr. Dunphy?  I know you'll be able to take care of him, because if you can't take care of him, he's going to have to take care of himself.

"Mr., Mr. . . . I'm talking to you, sir.  So look at me and listen.  I, I read prior counsel's affidavit and I was troubled by the contents of her affidavit.  You will not get another attorney appointed to represent you, do you understand me, sir?"

The defendant:  "If they don't do me justice, I can't keep them on.  So that's why I had to . . ."

between the defendant and his attorney was marked by difficulties similar to those in his previous appointments.  On September 4, 2012, the defendant filed a motion requesting the appointment of a new attorney and, on September 10, the attorney filed a motion to withdraw.  After a hearing on September 13, 2012, a different judge allowed the attorney's motion to withdraw and then appointed him for standby purposes only.  Thereafter, on February 26, 2013, the attorney filed a motion to withdraw as standby counsel.  On that date, the judge entered an order directing the defendant to show cause why he should not be deemed to have forfeited his right to counsel, and a forfeiture hearing was scheduled for the following day.

On the following day, the judge appointed new counsel to represent the defendant for purposes of the hearing on the question of forfeiture.  At the forfeiture hearing, the judge heard testimony of the withdrawing attorney and a report from the attorney appointed that morning.  He also had before him the affidavits of the seven attorneys who previously had moved to withdraw.  Based on his review of that material, he concluded that "this is the rare case where the defendant has forfeited

---

Judge:  "Do you understand?  It's a yes or no.  Do you understand?"

The defendant:  "Yes."

Judge:  "Thank you.  Very good.  Okay, Mr. Dunphy."

his right to counsel in this probation violation action by his own egregious conduct."

Discussion. Absent forfeiture or waiver of the right to an attorney, "a probationer is entitled to the effective assistance of counsel at a probation violation hearing whenever imprisonment may result." Commonwealth v. Pena, 462 Mass. 183, 188 (2012). An appellate court reviewing a trial court's ruling that a defendant has waived or forfeited his right to counsel for a probation violation hearing "give[s] substantial deference to [the] judge's factual findings . . . [but] 'review[s] claims of violations of the right to counsel de novo, making an independent determination of the correctness of the judge's application of constitutional principle to the facts found.'" Id. at 192 n.10, quoting from Commonwealth v. Means, 454 Mass. 81, 88 (2009).

The Supreme Judicial Court in Means identified "four considerations that generally govern whether forfeiture is appropriate." Id. at 93. "First, forfeiture of counsel typically is applied in circumstances where a criminal defendant has had more than one appointed counsel." Ibid., citing United States v. Leggett, 162 F.3d 237, 240 (3d Cir. 1998), cert. denied, 528 U.S. 868 (1999) (second appointed counsel). See United States v. McLeod, 53 F.3d 322, 325 (11th Cir. 1995) (second appointed counsel); People v. Gilchrist, 239 A.D.2d 306

(N.Y. 1997) (fourth appointed counsel); People v. Sloane, 262 A.D.2d 431 (N.Y. 1999) (third appointed counsel); State v. Carruthers, 35 S.W.3d 516, 538-539 (Tenn. 2000), cert. denied, 533 U.S. 953 (2001) (fourth appointed counsel).  In determining whether the defendant had forfeited his right to counsel, the hearing judge properly considered his conduct throughout the proceedings that began with his indictment in 2006 and continued through the April, 2013, hearing on his violations of probation.[5] During the pendency of those proceedings, seven attorneys moved for leave to withdraw from representing the defendant because of his misconduct, a consideration that weighed strongly in favor of forfeiture.

"Second, forfeiture rarely is applied to deny a defendant representation during trial.  It is more commonly invoked at other stages of a criminal matter, such as a motion for a new trial, sentencing, appeal, and pretrial proceedings." Commonwealth v. Means, 454 Mass. at 93.  The defendant in the present case was represented by counsel during his trial.  The hearing judge's ruling that the defendant had forfeited counsel

---

[5] "A probation violation proceeding is not considered to be a new criminal prosecution because the Commonwealth already has met its burden of proving guilt beyond a reasonable doubt." Commonwealth v. Pena, 462 Mass. at 190.  See Commonwealth v. Wilcox, 446 Mass. 61, 65 (2006).  Instead, "a probation violation hearing is part of the sentencing process." Commonwealth v. Pena, supra at 191 n.8.

for purposes of his probation violation hearing did not "deal as serious a blow to [the] defendant as would the forfeiture of counsel at the trial itself."  Id. at 94, quoting from United States v. Leggett, 162 F.3d at 251 n.14.

"Third, forfeiture may be an appropriate response to the defendant's threats of violence or acts of violence against defense counsel or others."  Commonwealth v. Means, supra. Although the hearing judge's findings about the defendant's conduct toward his appointed counsel were somewhat summary in nature, they adequately supported his conclusion that the defendant's conduct warranted forfeiture.  The judge found -- based on the affidavits filed by the defendant's various appointed counsel in support of their respective motions to withdraw -- that the defendant had engaged in a persistent pattern of hostility and threatening conduct toward them that included threats of physical violence to at least one attorney, as well as repeated accusations of unethical conduct coupled with threats to report counsel to the Board of Bar Overseers and the Attorney General for claimed misconduct and to file suit against them.  It is apparent, from a December 1, 2012, letter from attorney Dunphy to the defendant, that the defendant faulted attorney Dunphy for, among other things, refusing to engage in unethical conduct, including communicating with the defendant's daughter to pass along a message from the defendant

in violation of the terms and conditions of the defendant's probation, and providing the defendant with addresses for his daughter and his former wife.  The defendant's "behavior toward his counsel was repeatedly abusive, threatening, and coercive." United States v. McLeod, 53 F.3d at 326, cited with approval in Commonwealth v. Means, 454 Mass. at 94.  See People v. Sloane, 262 A.D.2d at 432 (defendant forfeited his right to counsel after he moved to discharge third appointed attorney by "his persistent pattern of threatening, abusive, obstreperous, and uncooperative behavior with successive assigned counsel").

"The fourth and final area of general agreement . . . is that forfeiture should be a last resort in response to the most grave and deliberate misconduct."  Commonwealth v. Means, 454 Mass. at 95.  Here, a series of "experienced and skilled criminal defense lawyers" had been appointed to represent the defendant.  Almost without exception, those lawyers came to the point of being unable to represent the defendant.  The defendant was warned at least once that he was risking his right to representation by his continued abuse of appointed counsel.  He knew what was at stake in the probation violation hearing. After he had been warned that the court would not appoint successor counsel, the defendant nonetheless moved to have attorney Dunphy removed and new counsel appointed on the frivolous ground that attorney Dunphy was senile or had memory

problems. The final hearing on the defendant's probation violations was repeatedly delayed due, at least in part, to his multiple changes in counsel. Appointment of yet another attorney would have delayed the final probation violation hearing even further.

The judge "g[a]ve notice of and conduct[ed] a[n evidentiary] hearing in which the defendant [wa]s given a full and fair opportunity to show why [the sanction of forfeiture of counsel] should not be imposed." Id. at 100. He allowed the defendant to be heard on whether attorney Dunphy should be permitted to withdraw as counsel. He took evidence, including evidence on the defendant's mental competence,[6] and heard argument on the question why the defendant should not be found to have forfeited his right to counsel. See id. at 97. The judge was not required to credit the defendant's unsupported claim that his mental state was impaired by "a brain tumor deep within the center of [his] brain." See Commonwealth v. McMahon, 443 Mass. 409, 422-424 (2005) (judge could rely on his observations of defendant, with other evidence, in concluding that defendant was competent). See also Commonwealth v. Pamplona, 58 Mass. App. Ct. 239, 243 (2003) (proper for judge to

---

[6] The Supreme Judicial Court has held that forfeiture and waiver by conduct are "inapplicable where the defendant is determined mentally incompetent to waive the right to counsel and proceed pro se." Commonwealth v. Means, 454 Mass. at 95.

rely on defendant's conduct and demeanor in determining competence).[7]

The hearing judge understood that forfeiture of counsel is a measure of last resort. His conclusion that this was the "rare" case in which the defendant, by his egregious conduct, had forfeited his right to counsel at his probation violation hearing was well supported by the record. See Commonwealth v. Means, 454 Mass. at 92-96. See also United States v. McLeod, 53 F.3d at 326; People v. Sloane, 262 A.D.2d at 432. There was no error.[8]

---

[7] We note as well that the judge subsequently ordered a competency examination of the defendant at the commencement of the probation revocation hearing itself. Following examination, the court's forensic psychologist testified to his opinion that the defendant "has a rational and meaningful understanding of what this hearing is about . . . [,] understands the gravity and the consequences for him . . .[, and] to the best of his ability, he is prepared to try to convince the [c]ourt about his innocence. So, with that said, I believe he is competent to go forward at this time."

[8] Our view of the case obviates any need for us to consider the Commonwealth's argument that the judge's ruling could be affirmed on the alternative basis that the defendant waived his right to counsel by his conduct. We note, however, that the judge who warned the defendant that attorney Dunphy would be the last attorney appointed to represent him, see note 4, supra, did not include in her warning a colloquy about the implications and consequences of proceeding without counsel. See Commonwealth v. Pena, 462 Mass. at 192. In any circumstances where a defendant is warned that his conduct could result in the loss of the right to counsel, and require the defendant to proceed without counsel, better practice would be to accompany the warning with a colloquy concerning the implications and consequences of proceeding without counsel.

The defendant's remaining claims require little discussion. As the Commonwealth observes in its brief, the docket of the case reflects that the defendant's counsel twice filed motions for funds for a private investigator, and both motions were allowed. The judge accordingly could reasonably reject as false the defendant's assertions that his former counsel did not request funds for an investigator. In any event, the defendant's request to commence a new investigation on the eve of his scheduled revocation hearing would have further delayed the hearing, which had already been postponed several times. Similarly, the judge did not abuse his discretion in refusing the defendant's late request to pursue hospital records, and to hire an expert to interpret them, as the request would have caused unnecessary delay in the hearing. The connection of the records to the matters at issue in the revocation hearing was tenuous at best, and the judge allowed the defendant to present prison medical records addressing the same subject matter. See Commonwealth v. Pena, 462 Mass. at 192-195 (judge must balance request for additional time against fair and efficient administration of justice).

As for the defendant's claim that the revocation hearing judge unfairly curtailed his cross-examination of the victim and her mother, we discern no abuse of discretion. See Commonwealth v. Odoardi, 397 Mass. 28, 34 (1986). The lines of examination

that are the subject of the defendant's claim were both irrelevant and potentially abusive.[9]

Finally, there is no basis for the defendant's claims, advanced pursuant to Commonwealth v. Moffett, 383 Mass. 201 (1981), (1) that the evidence established that the victim gave express permission to the defendant to contact her, and (2) that his actions were justified by the defense of necessity. As to the first, the victim testified unequivocally that she did not give express permission to the defendant to contact her, and the judge was entitled to credit her testimony. See Commonwealth v. Pugh, 462 Mass. 482, 495 (2012). For the same reason, the judge was not required to accept the defendant's assertion that the victim was engaged in prostitution, that the defendant's motive for writing the letters was to "rescue" the victim from prostitution, or that the defendant reasonably could expect that the sexually explicit letters he wrote to her were likely to accomplish that purpose.

---

[9] During the defendant's cross-examination of the victim, the judge attempted to guide the defendant toward relevant lines of inquiry, and ultimately curtailed the defendant's examination when the defendant asked her whether the reason he wrote sexually explicit letters to her was to make her feel that prostitution was a really nasty profession that she should abandon. The judge curtailed questioning of the victim's mother when the defendant sought repeatedly to question her about her knowledge of the conditions of his probation and her motivation in opening the letters he sent to the victim, following warnings by the judge that the questions were irrelevant.

<u>Order revoking probation and imposing sentence affirmed</u>.